**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**EARL LEWIS ANDERSON, JR.**                                        **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 2:05cv1-MTP**

**RON KING, et al.**                                        **DEFENDANTS**

                                        **Consolidated With**

**EARL LEWIS ANDERSON, JR.**                                        **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 2:05cv2174-MTP**

**DAVID HOLLINGHEAD, et al.**                                        **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the court on the Motion for Summary Judgment [183] filed by defendants Bobby King, Martha Lewis and Nurse Gagnon,[1] and *sua sponte* for evaluation pursuant to 28 U.S.C. § 1915(e)(2).[2]  Having reviewed the submissions of the parties and the applicable law, the court finds that the Motion [183] should be GRANTED and that the claims against Bobby King, Martha Lewis, and Nurse Gagnon should be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff Earl Lewis Anderson, Jr., proceeding *pro se* and *in forma pauperis*, filed his

---

[1]In his complaint [13], plaintiff identifies defendant Gagnon as "Nurse Henry Gagnon." Likewise, the summons was issued for a Nurse "Henry" Gagnon.  *See* Docket Entry dated 2/2/06; Order [31]; Summons Return [52].  However, "George" Gagnon, a nurse at SMCI, filed an answer [126] to plaintiff's complaint, and "George" Gagnon is the defendant that filed the instant motion.  Since there is only one defendant "Gagnon" involved in this action, the court will assume that "Henry" and "George" Gagnon are the same person, and will refer to Mr. Gagnon as "Nurse Gagnon."

[2]The plaintiff is proceeding *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915.

Complaint [1] pursuant to 42 U.S.C. § 1983 on January 3, 2005.[3]  Plaintiff is currently

incarcerated in South Mississippi Correctional Institution- II ("SMCI"), serving a thirteen-year

sentence for aggravated assault and the possession of a weapon by a felon.  Through his

voluminous complaints and amended complaints, and as clarified during his *Spears*[4] hearing,

plaintiff asserted claims for conspiracy, due process violations, denial and/or delay of adequate

medical treatment, excessive force, threats, denial of access to the courts, and retaliation, naming

approximately seventy-nine (79) defendants.[5]  The following six (6) defendants were dismissed

by Order [31] on January 27, 2006:  D. Gray, Unknown Case Manager Lewis, Jerry Rice, Glenn

Spann, I. Turner, and Shermandale Wiley.

     After conducting a *Spears* hearing on September 6, 2006, the court entered an Order

---

[3]This action has been consolidated with Civil Action No. 2:05cv2174, in which plaintiff filed his Section 1983 Complaint [1] on December 9, 2005.  *See* Order Consolidating Cases [122] (consolidating the two cases for all purposes and ordering that all pleadings and filings be filed under Civ. Action No. 2:05cv1).

[4]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[5]The seventy-nine defendants named in the two consolidated actions include the following: M. Bailey, Timothy Barnes, Katherine Beastley, Lloyd Beasley, Cherlie Berry, Betty Bivens, Dr. Blackstone, Rita Bonner, Dr. Bradley, James Brewer, Officer Brewer, Officer Butler, Terry Carter, Vickey Chapman, William Cuddley, Tara Dailey, Hubert Davis, James Davis, Melvin Davis, Sarah Davis, R. Denmark, Christopher Epps, 2 Unknown ERT Officers, B. Everett, Melinda Ezell, Nurse Gagnon, E. Goings, Adam Graves, Alvin Graves, D. Gray, Captain Guess, Regina Hancock, Warren Hancock, Larry Hardy, Hal Hayes, Lt. Henderson, David Hollinghead, C. Hood, James Johnson, Florence Jones, Daniel Kidd, Bobby King, Ron King, Officer Langley, Don Lewis, Nurse Martha Lewis, Richard Lewis, Case Manager Lewis, Unknown Captain Lewis, William Madden, Dr. May, L. Merrit, Timothy Morris, Daniel Paff, Connie Pierce, Lynda Powell, Dr. K. Quinn, T. Rankin, Nurse Rebecca, D. Revette, Jerry Rice, Theresa Seabrook, Lt. Brenda Sims, Glen Spann, Emmitt Sparkman, Kenneth Stanley, Laura Steward, L. Stewart, I. Turner, M. Turner, Dr. Unknown Turner, Unknown Officer Urbank, Dr. Jerry Welch, Captain D. West, Lt. G. West, Tony White, Travis White, Shemandale Wiley, and Eddie Wolfe.

[121] dismissing the following fourteen (14) defendants: Dr. Unknown Blackston, James Davis, R. Denmark, Christopher Epps, B. Everett, Captain Unknown Guess, Warren Hancock, Florence Jones,  Daniel Kidd, Timothy Morris, Theresa Seabrook, Emmitt Sparkman, L. Stewart, and Lt. G. West.

On November 9, 2007, the following thirty-three (33) defendants were dismissed by Order [177]:  M. Bailey, Timothy Barnes, Katherine Beastley, Cherlie Berry, Betty Bivens, Rita Bonner, Officer Brewer, Officer Butler, Terry Carter, Vickey Chapman, Tara Dailey, Melvin Davis, 2 Unknown ERT Officers, E. Goings, Regina Hancock, Larry Hardy, Hal Hayes, Lt. Henderson, C. Hood, Officer Langley, Richard Lewis, Unknown Captain Lewis, L. Merrit, Connie Pierce, Dr. K. Quinn, Nurse Rebecca, Laura Steward, M. Turner, Unknown Officer Urbank, Captain D. West, Tony White, Travis White, and Eddie Wolfe.  Subsequently, the following nine (9) defendants were dismissed by Order [179] dated November 29, 2007: Dr. Bradley, William Cuddley, Sarah Davis, Alvin Graves, Dr. May, T. Rankin, D. Revette, Dr. Unknown Turner, and Dr. Jerry Welch.

At present, **the following seventeen (17) defendants remain in this action**: 1) Lloyd Beasley,[6] 2) James Brewer, 3) Davis Hubert, 4) Melinda Ezell, 5) Nurse Gagnon, 6) Adam Graves, 7) David Hollinghead, 8) James Johnson,[7] 9) Bobby King, 10) Ron King, 11) Don Lewis, 12) Nurse Martha Lewis, 13) William Madden, 14) Daniel Paff,[8] 15) Lynda Powell, 16)

---

[6]Defendants filed a Suggestion of Death Upon the Record [195] as to Lloyd Beasley on March 3, 2008.

[7]Defendants filed a Suggestion of Death Upon the Record [124] as to James Johnson on February 20, 2008.

[8]Sometimes referred to as Daniel "Papp."

Lt. Brenda Sims, and 17) Kenneth Stanley.

As set forth in his pleadings, and as amended by the sworn testimony given during his *Spears* hearing,[9] plaintiff's allegations against the moving defendants, Bobby King, Administrative Director of SMCI Medical Department, Martha Lewis, a nurse at SMCI, and Nurse Gagnon, a nurse at SMCI, are that these defendants were deliberately indifferent to his serious medical and dental needs, and also that Bobby King conspired against him.

Specifically, plaintiff claims that Nurse Gagnon was deliberately indifferent to his serious dental needs. (Tr. 94).[10] He claims that Nurse Gagnon denied him a sick call, and that he turned in sick call requests for dental care for over a month, but they never made it to the medical department. Plaintiff alleges that Nurse Gagnon threw the requests away, and admitted that he did so. *Id.* He testified that this occurred in January and February of 2005. *Id.*

Plaintiff alleges that Nurse Martha Lewis was deliberately indifferent to his serious medical needs by denying him medical treatment "on many occasions." (Tr. 140). He further claims that she charged him four or five times for the same visit to discourage him from requesting medical treatment, and did so on several occasions. *Id.* He further alleges that she would make him fill out a different medical request for each type of medication prescribed by the doctor, "while she threatened [him] that she would not give it to [him]." (Tr. 141). He also claims that she "altered the doctor's orders." *Id.* Plaintiff claims that this constitutes deliberate indifference to his medical needs because she wanted to overcharge him to discourage him from

_____

[9]*See Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

[10]*Spears* Transcript.

4

putting in more medical requests, and to prevent him from getting the medical treatment he needed. *Id.*

Plaintiff alleges that Bobby King "ran him out" of the dentist's office on or about June 16, 2005. (Tr. 39, 42). He further alleges that Mr. King authorized the wrong medication for him. (Tr. 46-47). Specifically, he claims that Mr. King authorized high blood pressure medication and "psych" medication for him, when he did not have high blood pressure or psychiatric problems. *Id.* He claims that Mr. King denied him adequate medical treatment. (Tr. 47). Plaintiff also alleges that Mr. King conspired to get him beaten down, to deny him dental care, to give him the wrong blood pressure medication, and to throw manure on him. (Tr. 108-110). He claims that the high blood pressure medicine "made [his] head feel like it was going to bust." (Tr. 109-10).

On February 4, 2008, defendants Bobby King, Nurse Martha Lewis, and Nurse Gagnon filed their Motion for Summary Judgment [183].[11] On or about February 21, 2008, the plaintiff filed a motion [192] seeking miscellaneous relief, including an extension of time to respond to the motion for summary judgment. On February 25, 2008, the court entered an Order [193] granting plaintiff an extension of time until February 29, 2008 to file his response in opposition to the motion. On or about March 3, 2008, plaintiff filed his response [196] in opposition to the motion.[12]

---

[11]Plaintiff was transferred to SMCI on or about April 6, 2004. *See* Ex. 2 to Motion [183-6] at EA00063.

[12]Plaintiff titled his response [196] as a "Motion for Default Judgment as to attorneys and defendants." Plaintiff's response is timely filed pursuant to the mailbox rule, which provides that a prisoner's pleading is filed when it is delivered to the prison official for mailing. *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *see also Nelson v. Cauley*, No. 3:04cv828-G, 2005 WL 221349, at *2 (N.D. Tex. Jan. 27, 2005) ("The mailbox rule generally applies to all prisoner

Plaintiff's response [196], which consists of over sixteen pages of rambling disjointed discourse, merely rehashes the alleged conspiracies of others against him dating back to 2002. These alleged conspirators include the undersigned, judges from other cases involving the plaintiff, the defendants' attorneys, the attorney general, prison and non-prison doctors and medical staff, and a slew of other prison officials, the majority of which are not defendants in this case.  Plaintiff also discusses new allegations not included in any of his complaints or mentioned during his *Spears* hearing.

Plaintiff's response only addresses one of the three moving defendants; plaintiff briefly makes conclusory, unsubstantiated assertions of a conspiracy against Bobby King.  Plaintiff claims that on May 24, 2004, he informed Bobby King that Dr. Bradley told him he did not give a "rat's ass" about his dental problems.[13]  He also alleges that on June 18, 2004, Bobby King and others conspired "to seek ill will and hardship on plaintiff knowingly he was in severe pain at the time."[14]  Plaintiff claims that Bobby King and others ordered him psych medication and high blood pressure medication "without the proper test" and without plaintiff's knowledge in an attempt to kill plaintiff.[15]

Plaintiff does not even mention the other two moving defendants' names (Nurse Gagnon and Nurse Martha Lewis) in his response, much less offer any proof that would raise a genuine issue of material fact as to the claims asserted against them.

---

district court filings.").

[13]*See* Response [196] at 10.

[14]*Id.*

[15]*See* Response [196] at 10, 14-15.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

Additionally, because the plaintiff is proceeding *in forma pauperis* in this action, his complaint is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2), which mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious." *See also Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990) (recognizing the court's authority "to test the proceeding" and deeming

7

appropriate *sua sponte* evaluation of the merit of the asserted claim).  "A complaint is frivolous if it lacks an arguable basis in law or in fact."  *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).  This court is "vested with especially broad discretion in making the determination of whether an IFP proceeding is frivolous."  *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

ANALYSIS

The plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983.  However, Section 1983  "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers."  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).  Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."  *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there

8

is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

<u>Denial of Adequate Medical Care</u>

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838.

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. CIVA 403CV141WHBJCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Plaintiff has failed to establish that Nurse Martha Lewis was deliberately indifferent to his serious medical needs. The record reflects that pursuant to SMCI policy, inmates can only present one complaint in each Sick Call Request ("SCR"), and that this policy was explained to plaintiff by Nurse Lewis shortly after his arrival at SMCI in April 2004.[16] The policy was again explained to plaintiff by Nurse Lewis on September 21, 2004.[17] Nurse Lewis's progress notes reflect that plaintiff became hostile after she told him to separate his complaints, and that he took the SCR she gave him and ripped it up and threw it in the garbage, stating "I don't want you to have this so you will not charge me."[18]

There is no evidence that Nurse Lewis overcharged plaintiff for sick call visits, and there is certainly no evidence that the alleged actions of Nurse Lewis discouraged or prevented plaintiff from filing additional SCRs. To the contrary, the record reflects that plaintiff presented

---

[16]*See* Ex. 2 to Motion [183-6] at EA00066.

[17]*See* Ex. 2 to Motion [183-6] at EA00089.

[18]*Id.*

close to fifty SCRs from the time he arrived at SMCI in April 2004 through September 2006.[19]

There is no evidence that Nurse Lewis denied plaintiff medical care, or that Nurse Lewis

prevented plaintiff from receiving medical care.  Based on the record, plaintiff was seen by

doctors on numerous occasions for various ailments.  Plaintiff failed to offer any evidence in his

response [196] to create a real controversy of material fact as to his unsubstantiated claims

against Nurse Lewis.  In fact, his response did not even mention Nurse Lewis.  Accordingly,

plaintiff has failed to establish a claim for deliberate indifference against Nurse Martha Lewis.

Further, plaintiff's allegations that Nurse Lewis threatened not to give him additional

SCRs does not rise to the level of a constitutional violation.  "[M]ere threatening language and

gestures of a custodial officer do not, even if true, amount to constitutional violations."

*McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (quoting *Coyle v. Hughes*, 436 F. Supp.

591, 593 (W.D. Okla. 1977)).

Plaintiff has also failed to establish that Nurse Gagnon was deliberately indifferent to his

serious medical needs.  Plaintiff has failed to put forth any evidence that Nurse Gagnon denied

him medical treatment or prevented him from receiving medical treatment.  There is also no

evidence that Nurse Gagnon threw plaintiff's SCRs away.  Plaintiff submitted a SCR to Nurse

Gagnon on or about January 13, 2005, and it is stamped "received" by medical on the same

date.[20]  Nurse Gagnon referred plaintiff to a physician, and Dr. Welch reviewed plaintiff's chart

on January 27, 2005.[21]  Plaintiff submitted SCRs to Nurse Gagnon on February 7 and 17, 2005,

---

[19]*See* Ex. 2 [183].

[20]*See* Ex. 2 to Motion [183-6] at EA00098.

[21]*See* Ex. 2 to Motion [183-6] at EA00098-99.

and both were stamp "received" by medical on those dates.[22]  On February 7, 2005, Nurse

Gagnon prescribed plaintiff Tylenol 325 for a migraine headache, and on February 17, 2005,

plaintiff complained of constipation and Nurse Gagnon prescribed him Docusate sodium 100

mg.[23]

Plaintiff submitted a SCR to Nurse Gagnon on March 18, 2005, for migraine headaches.

Nurse Gagnon offered plaintiff protocol medication for the headaches, but plaintiff refused the

medication and demanded to see a provider.  Nurse Gagnon made plaintiff an appointment with a

doctor for March 24, 2005.[24]  Plaintiff submitted a SCR to Nurse Gagnon on April 1, 2005,

claiming that the blood pressure medication he was causing him headaches, and Nurse Gagnon

made him an appointment with a physician.[25]  Plaintiff submitted a SCR to Nurse Gagnon on

June 17, 2005, for alleged injuries from an assault on June 16, 2005; Nurse Gagnon noted that no

treatment was necessary because plaintiff was seen by Dr. Arnold the day before for the same

complaints and Dr. Arnold determined that no treatment was necessary.[26]  Plaintiff was not

charged for this visit.  The record indicates that several SCRs were subsequently submitted to

Nurse Gagnon by the plaintiff; all were stamped "received" by medical, and there is no evidence

that Nurse Gagnon denied plaintiff medical treatment or prevented him from receiving

---

[22]*See* Ex. 2 to Motion [183-6] at EA000102-03.

[23]*Id.*

[24]*See* Ex. 2 to Motion [183-6] at EA000105-08.

[25]*See* Ex. 2 to Motion [183-6] at EA000109-10.

[26]*See* Ex. 2 to Motion [183-7] at EA000121-25.

12

treatment.[27]  Rather, on each occasion, Nurse Gagnon either referred plaintiff to a physician or prescribed him the protocol medication for his complaint.[28]

Plaintiff failed to offer any evidence in his response [196] to create a real controversy of material fact as to his unsubstantiated claims against Nurse Gagnon.  In fact, his response did not even mention Nurse Gagnon.  Accordingly, plaintiff has failed to establish a claim for deliberate indifference against Nurse Gagnon.

Finally, plaintiff has failed to establish that Bobby King was deliberately indifferent to his serious medical needs.  Plaintiff alleges that Mr. King authorized the wrong medication for him. As stated in the defendants' supporting memoranda [183], Bobby King is not a medical provider; rather, he is the administrative director of the medical department at SMCI.  There is no evidence that Mr. King authorized plaintiff's medications.  However, even if he did authorize psych or blood pressure medication prescribed to plaintiff by one of the doctors at SMCI, and such medication should not have been prescribed, such authorization does not amount to a constitutional violation.  *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor to treat his shoulder injury"); *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2nd Cir. 2000) (holding that the failure of the non-doctor defendants– Warden and Health Services Administrator– to intervene in the medical treatment of an inmate was not objectively unreasonable, even if it were wrongful).

Plaintiff also claims that Bobby King denied him adequate medical treatment.  However,

---

[27]*See* Ex. 2 to Motion [183-7] at EA000142, 144-45, 153-54, 174, 183-85, 192.

[28]With the exception of June 17, 2005, as noted above.

the record does not support this bald accusation.  The medical records produced by the

defendants establish that plaintiff was seen my medical providers too many times to document

here, including an outside consult with Dr. May, an oral surgeon, on June 16, 2005.[29]  There is no

evidence to support the allegation that Mr. King ran plaintiff out of Dr. May's office on June 16,

2005.  Instead, the record reflects that plaintiff refused treatment by Dr. May, just as he refused

dental treatment on several prior occasions by the dentists at SMCI and CMCF, as well as other

recommended treatment by SMCI medical staff.[30]  Plaintiff failed to offer adequate proof in his

response [196] to create a real controversy of material fact as to his conclusory, unsubstantiated

claims against Bobby King.  Accordingly, plaintiff has failed to establish a claim for deliberate

indifference against Bobby King.

Conspiracy

Plaintiff alleges that Bobby King conspired to get him beaten down, to deny him dental

care, to give him the wrong blood pressure medication, and to throw manure on him.  (Tr. 108-

110).[31]  Conclusory allegations of a conspiracy are insufficient to state a claim under Section

1983.  *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992).   Further, the plaintiff must "prove

an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient."  *Villanueva*

*v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984); *see also Gillum v. City of Kerrville*, 3 F.3d 117,

123 (5th Cir. 1993).  Plaintiff offers absolutely no evidence in support of his allegations of

---

[29]*See* Ex. 2 to Motion [183].

[30]*See* Ex. 2 to Motion [183-7] [183-8] at EA000120-22, 141, 150-51, 161, 167, 169, 193-94, and 201-202.8.

[31]Although the defendants did not address plaintiff's conspiracy claim against Bobby King in their motion, the claim is subject to dismissal by the court pursuant to 28 U.S.C. § 1915(e)(2).

14

conspiracy against Bobby King.  The record reflects that plaintiff was offered dental care on

numerous occasions, including an outside consult with an oral surgeon; however, the plaintiff

refused treatment.  There is no evidence to support the conclusory allegations that Mr. King

conspired to deny plaintiff dental treatment on May 24, 2004, June 18, 2004, or any other date.[32]

Indeed, the record supports the contention that Mr. King tried to help plaintiff receive dental

care.[33]  Plaintiff's medical records establish that he has been refusing dental treatment as early as

2002, before his transfer to SMCI where Bobby King is the medical director.[34]

There is also no evidence to support plaintiff's conclusory allegation that Mr. King

conspired to prescribe him the wrong medication.  However, even if Mr. King did conspire with

others to authorize the psych or blood pressure medication prescribed to plaintiff by one of the

doctors at SMCI, and such medication should not have been prescribed, such authorization does

not amount to a constitutional violation, as discussed above.  *See supra, Camberos*, 73 F.3d at

176; *Cuoco*, 222 F.3d at 111.  Accordingly, plaintiff's allegations of a conspiracy do not rise to

the level of a constitutional violation.  *See Villanueva*, 723 F.2d at 418 (holding that the plaintiff

must "prove an actual deprivation of a constitutional right; a conspiracy to deprive is

insufficient").

---

[32]The medical records show that plaintiff was seen by a dentist on May 24, 2004, that an x-ray was taken, and that he was prescribed Motrin 800 mg.  The record further notes, "There is no evidence on this film to warrant sending this patient to off-site for treatment."  *See* Ex. 2 to Motion [183-8] at EA00202.2.  The medical records also show that plaintiff was seen by a dentist, Dr. Quinn, on June 18, 2004, and that the extraction of tooth #13 was recommended. Plaintiff refused treatment, and also refused to sign the release of responsibility.  Plaintiff's refusal of treatment was witnessed by Dr. Quinn, correctional officer Keshia Hartfield, and Bobby King.  *See* Ex. 2 to Motion [183-8] at EA00202.3-202.4.

[33]*See, e.g.*, Ex. 2 to Motion [183-8] at EA000202.6

[34]*See* Ex. 2 to Motion [183-8] at EA000201-202.2

Plaintiff also fails to offer any evidence to support his conclusory allegations that Bobby King conspired to have him "beaten down" and to throw manure on him. *See Wilson*, 976 F.2d at 958. Indeed, plaintiff does not even mention these allegations in his response [196]. Accordingly, plaintiff's conspiracy allegations against Bobby King fail to state a claim on which relief may be granted and should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

CONCLUSION

For the reasons stated above, the court finds that defendants' Motion for Summary Judgment [183] is GRANTED, and that plaintiff's conspiracy claim against Bobby King should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

IT IS, THEREFORE, ORDERED that Bobby King, Nurse Gagnon, and Nurse Martha Lewis are dismissed from this action with prejudice.

SO ORDERED this the 4th day of March, 2008.

s/ Michael T. Parker
United States Magistrate Judge