**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**EARL LEWIS ANDERSON, JR.**                                                    **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 2:05cv1-MTP**

**RON KING, et al.**                                                         **DEFENDANTS**

                                                                    **Consolidated With**

**EARL LEWIS ANDERSON, JR.**                                                    **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 2:05cv2174-MTP**

**DAVID HOLLINGHEAD, et al.**                                                  **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

THIS MATTER came on to be heard for a bench trial before the undersigned United

States Magistrate Judge on March 25-26, 2008.  The plaintiff appeared *pro se*, and Mr. James M.

Norris appeared on behalf of the defendants.  The court having heard the arguments of the parties

and considered all the evidence, finds that the plaintiff failed to prove by a preponderance of the

evidence the claims asserted against the remaining defendants.  Accordingly, the above matters

should be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff Earl Lewis Anderson, Jr., proceeding *pro se* and *in forma pauperis*, filed his

Complaint [1] pursuant to 42 U.S.C. § 1983 on January 3, 2005.[1]  Plaintiff is currently

---

[1]This action has been consolidated with Civil Action No. 2:05cv2174, in which plaintiff
filed his Section 1983 Complaint [1] on December 9, 2005.  *See* Order Consolidating Cases
[122] (consolidating the two cases for all purposes and ordering that all pleadings and filings be
filed under Civ. Action No. 2:05cv1).

incarcerated in South Mississippi Correctional Institution- II ("SMCI"), serving a thirteen-year sentence for aggravated assault and the possession of a weapon by a felon.  Through his voluminous complaints and amended complaints, and as clarified during his *Spears*[2] hearing, plaintiff asserted claims for conspiracy, due process violations, denial and/or delay of adequate medical treatment, excessive force, failure to protect, cruel and unusual punishment, threats, denial of access to the courts, and retaliation against virtually every person with whom he has come into contact with in the prison system.  The original complaint names approximately seventy-nine (79) defendants.[3]  The following six (6) defendants were dismissed by Order [31] on January 27, 2006:  D. Gray, Unknown Case Manager Lewis, Jerry Rice, Glenn Spann, I. Turner, and Shermandale Wiley.

---

[2]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3]The seventy-nine defendants named in the two consolidated actions include the following: M. Bailey, Timothy Barnes, Katherine Beastley, Lloyd Beasley, Cherlie Berry, Betty Bivens, Dr. Blackstone, Rita Bonner, Dr. Bradley, James Brewer, Officer Brewer, Officer Butler, Terry Carter, Vickey Chapman, William Cuddley, Tara Dailey, Hubert Davis, James Davis, Melvin Davis, Sarah Davis, R. Denmark, Christopher Epps, 2 Unknown ERT Officers, B. Everett, Melinda Ezell, Nurse Gagnon, E. Goings, Adam Graves, Alvin Graves, D. Gray, Captain Guess, Regina Hancock, Warren Hancock, Larry Hardy, Hal Hayes, Lt. Henderson, David Hollingshead, C. Hood, James Johnson, Florence Jones, Daniel Kidd, Bobby King, Ron King, Officer Langley, Don Lewis, Nurse Martha Lewis, Richard Lewis, Case Manager Lewis, Unknown Captain Lewis, William Madden, Dr. May, L. Merrit, Timothy Morris, Daniel Paff, Connie Pierce, Lynda Powell, Dr. K. Quinn, T. Rankin, Nurse Rebecca, D. Revette, Jerry Rice, Theresa Seabrook, Lt. Brenda Sims, Glen Spann, Emmitt Sparkman, Kenneth Stanley, Laura Steward, L. Stewart, I. Turner, M. Turner, Dr. Unknown Turner, Unknown Officer Urbank, Dr. Jerry Welch, Captain D. West, Lt. G. West, Tony White, Travis White, Shemandale Wiley, and Eddie Wolfe.

The court notes that these two consolidated matters are not plaintiff's first foray into massive litigation wherein he names almost every person he has come into contact with in the prison system.  These actions fall on the heels of a similar action filed by plaintiff in the United States District Court for the Southern District of Mississippi, Jackson Division, *Anderson v. Willie March et al.*, Civ. No. 3:03cv903, wherein he named approximately sixty-one defendants.

After conducting a *Spears* hearing on September 6, 2006, the court entered an Order [121] dismissing the following fourteen (14) defendants: Dr. Unknown Blackston, James Davis, R. Denmark, Christopher Epps, B. Everett, Captain Unknown Guess, Warren Hancock, Florence Jones,  Daniel Kidd, Timothy Morris, Theresa Seabrook, Emmitt Sparkman, L. Stewart, and Lt. G. West.

During the *Spears* hearing, plaintiff knowingly and voluntarily waived his right to a jury trial and consented to trial by the undersigned United States Magistrate Judge.[4]

On November 9, 2007, the following thirty-three (33) defendants were dismissed by Order [177]:  M. Bailey, Timothy Barnes, Katherine Beastley, Cherlie Berry, Betty Bivens, Rita Bonner, Officer Brewer, Officer Butler, Terry Carter, Vickey Chapman, Tara Dailey, Melvin Davis, 2 Unknown ERT Officers, E. Goings, Regina Hancock, Larry Hardy, Hal Hayes, Lt. Henderson, C. Hood, Officer Langley, Richard Lewis, Unknown Captain Lewis, L. Merrit, Connie Pierce, Dr. K. Quinn, Nurse Rebecca, Laura Steward, M. Turner, Unknown Officer Urbank, Captain D. West, Tony White, Travis White, and Eddie Wolfe.  Subsequently, the following nine (9) defendants were dismissed by Order [179] dated November 29, 2007: Dr. Bradley, William Cuddley, Sarah Davis, Alvin Graves, Dr. May, T. Rankin, D. Revette, Dr. Unknown Turner, and Dr. Jerry Welch.

On March 4, 2008, the court entered an Order [197] granting summary judgment in favor of defendants Bobby King, Nurse Gagnon, and Nurse Martha Lewis, dismissing those defendants with prejudice.

---

[4]*See Spears* Transcript at pp. 12-17, filed in Civil Action No. 2:05cv2174 on October 1, 2007 (hereinafter cited to as "Tr."); *see also* Docket Entry dated November 1, 2007, in Civil Action No. 2:05cv1.

On March 7, 2008, the court conducted the pretrial conference for this matter.  The plaintiff appeared *pro se* and Mr. John Clay appeared on behalf of the defendants.  The plaintiff submitted approximately 63 potential witnesses in his pretrial submissions [191], including 39 civilian witnesses (several of whom are State officials), the 17 defendants remaining in the action at the time of the pretrial conference, 6 inmates, and presumably himself.  The court informed the plaintiff that it would not require that large a number of witnesses to attend trial and repeatedly urged the plaintiff to review the list in open court with a view towards eliminating duplicate witnesses and those witnesses whose testimony related to claims that had been dismissed.  However, plaintiff declined to assist in the preparation of the pretrial order or otherwise participate in the pretrial conference, preferring instead to argue over previous decisions made in this case and demand that the undersigned recuse himself.  Accordingly, after numerous attempts to secure plaintiff's cooperation, the court terminated the pretrial conference and informed plaintiff that it was his obligation to secure the attendance of witnesses as he had refused or declined the assistance of the court.

Despite the Motion to Dismiss [203] urged by the defendants pursuant to Federal Rules of Civil Procedure 16(f) and 41 based on plaintiff's failure to participate in the pretrial conference, the following claims against the remaining defendants proceeded to trial as set forth in the Pretrial Order [198]:[5]

---

[5]The claims identified herein are as set forth in plaintiff's pleadings, and as amended by the sworn testimony given during his *Spears* hearing.  *See Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).  The allegations are set forth in more detail in the transcript of plaintiff's *Spears* hearing.  *See* Docket Entry dated November 1, 2007.

1.  **Lloyd Beasley**[6] - excessive force: allegedly attacked plaintiff on two or three different occasions in July 2004 and November 2004; he threw plaintiff up against the wall in the mess hall and injured him (Tr. 57-58);

2.  **James Brewer** -excessive force: he allegedly tried to beat plaintiff up and get him in lock-down; deliberate indifference to serious medical needs: he allegedly never answered plaintiff's request to refer him to an oral surgeon (Tr. 69-70);

3.  **Hubert Davis** - failure to protect: he allegedly assigned Officer David Hollingshead and Officer Adam Graves to transport plaintiff in June 2005, even though plaintiff made a complaint with Davis that those same officers attacked him in October 2004 (Tr. 47-48);

4.  **Melinda Ezell Box**[7] - denial of access to the courts: she allegedly denied plaintiff a legal assistance request form and denied him legal assistance, which prevented him from receiving a copy of a pleading that he needed in order to prove that he had stated authority in such pleading, contrary to the judge's ruling (Tr. 92-93);

5.  **Adam Graves** - excessive force: allegedly attacked plaintiff in the courthouse on October 24, 2004, and in June 2005, while in Dr. May's office, Officer Graves allegedly grabbed plaintiff by the neck and stuck something in his back and threw him against the wall, resulting in neck, back and shoulder injury; denial of access to the courts: allegedly tampered/interfered with plaintiff's paperwork, but he was ultimately able to file the document (Tr. 34-35); cruel and unusual punishment: on June 16, 2005, he allegedly harassed plaintiff the whole way to Dr. May's office; conspiracy; deliberate indifference to serious medical need: he allegedly took plaintiff out of dentist chair and denied him dental treatment (Tr. 39-42);

6.  **David Hollingshead -**excessive force: allegedly attacked plaintiff in the courthouse on October 24, 2004, and In June 2005, while in Dr. May's office, Officer Hollingshead allegedly grabbed plaintiff by the neck and stuck something in his back and threw him against the wall, resulting in neck, back and shoulder injury; denial of access to the courts: allegedly tampered/interfered with plaintiff's paperwork, but he was ultimately able to file the document (Tr. 34-35); cruel and unusual punishment: on June 16, 2005, he allegedly harassed plaintiff the whole way to Dr. May's office; conspiracy; deliberate indifference to serious medical need: he allegedly took plaintiff out of dentist chair and denied him dental treatment (Tr. 39-42);

---

[6]The defendants filed a Suggestion of Death [195] as to Lloyd Beasley on March 3, 2008.

[7]During trial, the court was informed that Melinda Ezell is now Melinda Ezell Box.

7.  **James Johnson[8]**- denial of access to the courts: he allegedly damaged and destroyed plaintiff's paperwork and took his personal address book and calendar where he had written down issues; retaliation: allegedly showed deliberate indifference towards him for filing a lawsuit; allegedly threatened plaintiff's life; deliberate indifference to serious medical need: allegedly denied plaintiff medical treatment–he was in charge of transportation (Tr. 104-05);

8.  **Ronald King** - conspiracy: every time plaintiff saw a dentist, King allegedly conspired/influenced them to say plaintiff refused treatment (Tr. 44); he is allegedly behind the entire conspiracy against plaintiff (Tr. 111);

9.  **Don Lewis** - allegedly threatened plaintiff's life; deliberate indifference to serious medical needs: he allegedly ignored plaintiff's complaints about others conspiring to harm him (Tr. 113-115);

10. **William Madden** - conspiracy and denial of due process: Madden allegedly signed his name on false Rule Violation Reports ("RVR's") that he claimed he delivered (Tr. 115-16);

11. **Daniel Paff** - retaliation: he allegedly retaliated against plaintiff for filing an ARP grievance (Tr. 118); other claims against Paff were dismissed by Order [177];

12. **Lynda Powell** - deliberate indifference to plaintiff's serious medical and dental needs after being contacted in October 2002; conspiracy: allegedly conspired to ignore plaintiff's complaints and injuries (Second Amended Complaint [13] at ¶ 6);

13. **Brenda Simms -** denial of due process: allegedly threatened some witnesses who were going to testify on his behalf at a disciplinary hearing for an RVR (Tr. 125);

14. **Kenneth Stanley** - conspiracy: allegedly conspired with gang members to attack plaintiff; denial of process: allegedly found him guilty at a hearing with no notice, and no real hearing was conducted, and failed to respond to appeal of hearing (Tr. 130).

## ANALYSIS

At the outset of the trial, the plaintiff re-urged his motion for a jury trial, which the court

---

[8]Defendants filed a Suggestion of Death Upon the Record [124] as to James Johnson on February 20, 2008.

denied based on the plaintiff's waiver of a jury trial during his *Spears* hearing over a year ago.[9]

During the trial of this matter, the plaintiff's evidence consisted of his own testimony, the testimony of his sister, Jean Anderson, and the testimony of the following defendants: James Brewer, Hubert Davis, Melinda Ezell Box, Adam Graves, David Hollingshead, Don Lewis, Daniel Paff, Lynda Powell, and Kenneth Stanley.  Additionally, plaintiff submitted over sixty exhibits as evidence.  The defendants presented testimony from the nine aforementioned defendants, as well as documentary evidence.

The plaintiff's sister, Jean Anderson, testified on plaintiff's behalf for over three hours. According to Ms. Anderson, the rules changed each time she would visit her brother, his visitation rights were restricted, and the rules did not apply equally to other inmates.  Whenever plaintiff would ask for medical care, prison officials would retaliate by issuing him RVR's and taking away his visitation privileges.  She testified regarding the alleged inadequacies of plaintiff's medical treatment dating back to 2001, but admitted that she was not present for any of his medical appointments since he was placed in the custody of the Mississippi Department of Corrections ("MDOC") in July 2002.  She further testified that prior to July 2002, she used to be a licensed massage therapist and was allowed to come to the jail to give her brother massage therapy for his back and shoulders.  After plaintiff's transfer in July 2002, Ms. Anderson spoke with Lynda Powell about investigating the plaintiff's medical needs, and Ms. Powell informed her that based on the MDOC's medical records, plaintiff had received adequate medical care.

Ms. Anderson testified that plaintiff told her that he was attacked by defendants David

---

[9]The court had recently denied a prior request made by plaintiff based on the same grounds.  *See* Order [193].

Hollingshead and Adam Graves in October 2004 in the federal courthouse in Jackson, Mississippi, but she did not witness the attack. She also testified that she never personally witnessed an attack or any kind of excessive force on plaintiff; had never observed anyone threaten or conspire against him; and had never seen anyone issue him an RVR.

David Hollingshead, SMCI transportation officer, testified that he and Officer Adam Graves transported plaintiff to the federal courthouse in Jackson on October 21, 2004, and that he had never met plaintiff before that date. He escorted plaintiff to Judge Nicols's chambers and plaintiff started bringing up old cases. Judge Nicols said he was finished with plaintiff and did not want to hear about old cases and asked them to leave. While in the elevator of the courthouse, plaintiff would not face the back of the elevator as instructed, so Officer Hollingshead placed one hand on his shoulder and one hand on his waist chain and turned him around. *See* Ex. D-6. He testified that he did not use any force on that date. He wrote plaintiff an RVR for disobeying orders. *See* Exs. D-9, P-10.

Officer Hollingshead further testified that he transported plaintiff to see Dr. May, an oral surgeon, in Jackson on June 16, 2005. After plaintiff began filling out his paperwork and Dr. May deadened his tooth, plaintiff became loud and disorderly, questioned the treatment offered, and questioned Dr. May's credentials. As a result of plaintiff's disruptive conduct, Dr. May declined to treat the plaintiff. Officer Hollingshead pulled plaintiff out of the chair and escorted him to the van and transported him back to SMCI. *See* Ex. D-7. He got a refusal slip signed by Dr. May. *See* Ex. D-8. He testified that he never grabbed plaintiff around the neck or slammed him into the wall, never stuck something in his back, and that he never threatened or harassed plaintiff. Finally, he testified that he has never tampered or interfered with any of plaintiff's

paperwork and never prevented plaintiff from filing any court documents.

Adam Graves, SMCI transportation officer, testified that he and Officer Hollingshead transported plaintiff to the federal courthouse in Jackson on October 21, 2004. Officer Graves's testimony corroborated Officer Hollingshead's account of the event. He did not use excessive force on plaintiff and he never attacked plaintiff or witnessed anyone else do so. He also transported plaintiff to see Dr. May in Jackson on June 16, 2005. His testimony also corroborated Officer Hollingshead's account of this event. He did not use excessive force on plaintiff; rather, he escorted plaintiff out of the doctor's office because he became disorderly and aggressive towards the doctor and his staff.

James Brewer, current MDOC Warden and former SMCI Warden, testified that he did not remember plaintiff and did not recall getting any letters from or about him. He has no knowledge of threats made to plaintiff's life. When he receives a complaint from an inmate about a medical problem, he tells them to fill out a sick call request. He does not make referrals to medical specialists and does not handle transportation of inmates. He testified that he never tried to beat plaintiff up and did not refuse his request to see an oral surgeon.

Hubert Davis, current Deputy Warden at SMCI II and former Captain at SMCI, testified that plaintiff is a "household name" due to his defiant actions towards staff and because he is never satisfied with anything. He remembers plaintiff complaining about Officers Hollingshead and Graves during the June 2005 trip to the dentist, and he investigated it. He called their supervisor, and the supervisor told him plaintiff had acted up so the officers escorted him back. He testified that he had no knowledge of the October 2004 incident with Officers Hollingshead and Graves until trial and that he never failed to protect plaintiff.

Daniel Paff, Correctional Administrator at SMCI, testified that he never personally had any problems with plaintiff, but he has witnessed plaintiff act disorderly towards medical staff. He has called the medical clinic numerous times on plaintiff's behalf.  He never threatened plaintiff or retaliated against him for filing an ARP grievance.

Don Lewis, Correctional Commander/Captain at SMCI, testified that he does have relatives that work at SMCI in response to plaintiff's questioning at trial.  He stated that he never threatened plaintiff's life or conspired with others to do so.  He also never ignored plaintiff's complaints regarding a serious medical need, or his complaints that others were conspiring to harm him.  Plaintiff spent the majority of his time questioning Captain Lewis about the whereabouts of his legal property.

Lynda Powell, Wexford Health Sources Regional Director of Nursing and former employee of MDOC and University Medical Center, testified that she does not recall being contacted by plaintiff or his sister.  Plaintiff questioned her regarding her name being referenced on a note from Jefferson County Correctional Facility; she testified that the note was just to let her know that plaintiff was being moved.

Kenneth Stanley, Correctional Supervisor at SMCI, testified that he served plaintiff with an informal resolution (a minor rule infraction), but plaintiff refused to sign it because he disagreed with the punishment.  Pursuant to policy, Lt. Stanley issued him an RVR for refusing to sign the informal resolution.  He testified that plaintiff refused to appear at the RVR hearing, and was subsequently delivered a copy of the RVR finding pursuant to policy.  Lt. Stanley never failed to provide plaintiff with notice of a RVR or a hearing.  He never failed to respond to plaintiff's appeal; he receives appeals through the Administrative Remedy Program, not directly

from inmates.  He has not conspired with anyone to attack plaintiff.

Melinda Ezell Box, former Inmate Legal Assistance Program ("ILAP") Director at SMCI, testified that plaintiff received assistance from ILAP on June 10, 2004; she mailed three copies of a document to the district court in Jackson, Mississippi, and gave plaintiff one copy.  Plaintiff questioned Ms. Box about a Request for Administrative Remedy, Ex. 34, addressed to Larry Hardy that supposedly never left SMCI.  Ms. Box testified that she sent plaintiff a Section 1983 complaint form on August 12, 2004, and that she notarized and mailed documents for him on December 12, 2005.  *See* Ex. P-35.  Through his examination of Ms. Box, plaintiff attempted to prove mail fraud and wrongful interference with his mail.[10]  *See* also Exs. P-39-40.  Ms. Box testified that she gave plaintiff legal assistance almost every week during her employment at SMCI.  She testified that she never denied him legal assistance or prevented him from receiving a copy of a legal pleading, that she never failed to timely mail his legal documents, and never interfered with his mail.

On the second day of trial, plaintiff finally finished questioning his witnesses and took the stand.  Plaintiff testified that he has been facing the same issues for nine years, and that each judge that has heard his complaints has evaded the issues and denied him due process.  Although the court advised the plaintiff to focus on the claims at issue in the instant consolidated action, and not to harp on old issues that have already been litigated, plaintiff insisted on testifying about events that occurred eight years ago.  Plaintiff testified at length about his arrest by the Holmes County Sheriff's Department on February 7, 2000, and his subsequent beating by other inmates,

---

[10]Plaintiff raised these same issues in previous litigation, Civil Action No. 3:03cv903.  *See* Ex. P-33.  Plaintiff named sixty-one defendants in the previous case.  *See supra*, footnote 3.

and how did not receive medical treatment until days later, after his family called the jail officials.  He was beaten "beyond recognition" but was not allowed to be admitted into the emergency room pursuant to the doctor's request.  *See* Exs. P-11 through P-16.  He claims that this is where the conspiracy started.

Plaintiff testified that Judge Janie Lewis, Holmes County Circuit Court Judge, ordered him transferred to the Yazoo County Jail, and that he receive proper medical and dental treatment from specialists, and ordered Holmes County to pay the medical bills.  *See* Ex. P-19.  He has never gotten the care that was ordered, and defendants have ignored Judge Lewis's order.[11]

According to plaintiff, SMCI became involved in October 2004, when these issues regarding the Holmes County Sheriff's Department were presented to Judge Nicols in Jackson, Mississippi.  As part of a conspiracy, plaintiff claims that court staff directed his family to the wrong courtroom prior to his hearing.

Plaintiff testified that upon his arrival at SMCI on April 6, 2004, he informed Ron King, Warden Brewer, Hubert Davis, and Warden Johnson about his need for medical and dental treatment by a specialist.  He claims that he was mistreated by Dr. Bradley, a dentist at SMCI, on May 24, 2004, who told plaintiff he did not give a "rat's ass" about his medical problems, and kicked him out of his clinic; yet Ron King and Bobby King did nothing about it.[12]  He claims that he was given the wrong medication, and that he had adverse reactions to the medication he was given.  *See also* Ex. P-50.

---

[11]Plaintiff raised these same issues in previous litigation, Civil Action No. 3:03cv903.  *See* Ex. P-34.

[12]Plaintiff presented these same issues in previous litigation, Civil Action No. 3:03cv903.  *See* Ex. P-33.

Plaintiff testified that soon after his arrival at SMCI and request for specialist treatment, the defendants and others began retaliating against him, threatening, harassing him, and conspiring against him.  Plaintiff claims that Ron King called staff meetings to conspire against him and that he was issued several "bogus" RVRs, which were never delivered to him.[13]

According to plaintiff, Judge Alfred Nicols and Judge Barbour went to Holmes County for private meetings with Holmes County officials from 2002-2005, where bribes were made. When pressed to provide the basis for these allegations, plaintiff was unable to do so.  The court finds no merit whatsoever to these allegations.

Plaintiff testified that after his *Spears* hearing in this action on September 6, 2006, plaintiff was seen by an oral surgeon, Dr. Hill, who pulled some of his teeth, but four teeth still need to be pulled.

Finally, in response to defendants' *ore tenus* motion to dismiss, plaintiff claimed that he did not address all of the defendants and all of the remaining claims because all the defendants were not present, and because the claims are addressed in his pleadings, and that should be good enough for the court.

The court has thoroughly considered the plaintiff's allegations, and the testimony given by the plaintiff, his sister, and the nine defendants present at trial.  The court has also reviewed the sixty-four exhibits admitted at trial and/or marked for identification.  Based on the foregoing, the court concludes that plaintiff has failed to prove by a preponderance of the evidence any of the remaining claims before the court.  It is clear that plaintiff is passionate about his belief that there is a vast conspiracy against him dating back to February 2000, involving the Holmes

---

[13] Plaintiff raised these same issues in previous litigation, Civil Action No. 3:03cv903. *See* Ex. P-33 at p. 2.

County Sheriff's Department, the MDOC and its employees, state and federal judges and judiciary staff, doctors and other medical staff at MDOC facilities and private clinics, defense attorneys, and the State's Attorney General.  However, the evidence does not establish such a conspiracy; nor does it prove any violation of plaintiff's constitutional rights.

### Excessive Force, Cruel and Unusual Punishment, and Threats

The Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *See Copeland v. Nunan*, 250 F.3d 743, No. 00-20063, 2001 WL 274738, at *2 (5th Cir. Feb. 21, 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1 (1992)) (internal quotations and citations omitted).  When prison officials are accused of using excessive force, "the *core judicial inquiry* is . . . whether force was applied *in a good-faith effort to maintain or restore discipline*, *or maliciously and sadistically to cause harm.*"  *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson,* 503 U.S. at 7).  Some of the relevant objective factors in the inquiry of the application of excessive force include: "1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of the forceful response."  *Baldwin*, 137 F.3d at 838-39 (internal citations omitted).

As demonstrated by the testimony summarized above, plaintiff has failed to prove by a preponderance of the evidence that any of the defendants applied excessive force or subjected plaintiff to cruel and unusual punishment.  Plaintiff's brief conclusory testimony that defendant Lloyd Beasley "jumped on him" does not amount to a constitutional violation.  An Eighth

Amendment violation does not occur with "every malevolent touch by a prison guard." *Id.* at 839.  Further, the testimony of Officers Hollingshead and Graves establishes that minimal force was applied to plaintiff in October 2004 and June 2005 in a good-faith effort to maintain or restore discipline and to escort him out of the courthouse and the dentist's office.  Finally, there is no proof that Warden Brewer applied excessive force to plaintiff on any occasion.

Moreover,  "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations."  *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (quoting *Coyle v. Hughes*, 436 F. Supp. 591, 593 (W.D. Okla. 1977)).  Accordingly, even if defendants did threaten plaintiff, such threats do not rise to the level of a constitutional violation.

### Failure to Protect

In order to prevail on a failure to protect claim, the plaintiff must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."  *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).  The evidence and testimony submitted by plaintiff fails to establish a failure to protect claim  by a preponderance of the evidence against Hubert Davis or any other defendant.

Captain Davis testified that he had no knowledge of the alleged October 2004 attack on plaintiff by Officers Hollingshead and Graves.  Plaintiff's sister testified that she spoke with Captain Davis, but does not recall what they discussed.  Given the plaintiff's disruptive conduct at the courthouse and the oral surgeon's office, the conduct of Officers Hollingshead and Graves in removing plaintiff on each occasion was certainly reasonable and in no way involved excessive force.

**Retaliation**

"To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). To prevail on claim of retaliation, plaintiff must establish "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his . . . exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). To prove causation, plaintiff must show that "but for the retaliatory motive the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (internal citations and quotations omitted). The plaintiff must present either direct evidence of retaliatory motivation or "a chronology of events from which retaliatory motivation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal citations and quotations omitted). Plaintiff offered his own testimony with general allegations of retaliation, but failed to present direct evidence of retaliation by James Johnson, Daniel Paff, or any of the other named defendants, and failed to present a chronology of events from which retaliatory motivation may be inferred. Instead, plaintiff testified of a vast conspiracy against him and assumed that every adverse action taken against him was in retaliation for him filing a lawsuit or grievance, rather that his own disorderly conduct.[14]

**Due Process Violations**

Regarding plaintiff's allegations of "bogus RVR's," and their problematic deliveries, or lack thereof, this court does not "'second-guess' the findings and determinations of prison disciplinary committees[,]" nor does the "Constitution . . . demand 'error-free' decision making .

---

[14]The court again notes that many of these same issues were presented by plaintiff in previous litigation. *See e.g.*, Ex. P-5.

. . ."  *Hoye v. Nelson*, No. 4:07cv044-M-B, 2007 WL 1321964, at *1 (N.D. Miss. May 3, 2007)

(quoting *Collins v. King*, 743 F.2d 248, 153-54 (5th Cir. 1984)) (dismissing plaintiff's claim

regarding a "false RVR" *sua sponte,* reasoning that plaintiff's allegation did not constitute a

constitutional violation); *McGowan v. Peel*, No. 3:06cv659-DPJ-JCS, 2007 WL 710154, at *1-*2

(S.D. Miss. March 6, 2007) (internal citations and quotations omitted) (dismissing plaintiff's

complaint pursuant to 28 U.S.C. § 1915, where plaintiff claimed that he was innocent of the

charges in the RVR, his disciplinary hearing was delayed, that the report reflected the incorrect

date and time that he received a copy of the report; the court stated that a "prison official's failure

to follow the prison's own policies, procedures or regulations does not constitute a violation of

due process, if constitutional minima are nevertheless met").

Even if the defendants did issue, deliver, or fail to properly deliver "bogus" RVR's,

plaintiff did not establish how his due process rights were violated.  "A plaintiff must be

deprived of some right secured to him by the Constitution or the laws of the United States. . . . In

the event there is no constitutional right, the plaintiff's complaint fails."  *Hoye*, 2007 WL

1321964 at *1 (citations omitted); *see also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)

(holding that cell restrictions and loss of commissary privileges are "merely changes in the

conditions of [ ] confinement and do not implicate due process concerns"); *Hamilton v. Lyons*, 74

F.3d 99, 106 n.8 (5th Cir. 1996) (holding that denial of showers, legal materials, recreation and

other privileges for three days did not amount to cruel and unusual punishment in violation of the

Eighth Amendment).  Accordingly, plaintiff's claims for due process violations against

defendants William Madden, Brenda Simms, and Kenneth Stanley fail as a matter of law.[15]

---

[15]The court notes that during his trial, plaintiff never even mentioned William Madden or
Brenda Simms.

Moreover, the facts do not support plaintiff's claims.  Indeed, Kenneth Stanley testified that he never failed to provide plaintiff with notice of an RVR or a disciplinary hearing, and Hubert Davis testified that plaintiff has a pattern of cursing the prison staff when he is called up for the issuance of an RVR.  Further, there was testimony that plaintiff simply declined to sign for or accept disciplinary notices when they were delivered to him or otherwise refused to appear.  *See, e.g.*, Exs. P-10, P-25, P-29, and P-30.

Further, a prisoner does not have a constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction.  *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007).  Therefore, not only was plaintiff's claim that Kenneth Stanley failed to respond to his ARP appeal rebutted by Lt. Stanley's testimony, it fails as a matter of law.

### Denial of Access to Courts

Plaintiff failed to establish by a preponderance of the evidence that any defendant, specifically Melinda Ezell Box, James Johnson, David Hollingshead, or Adam Graves, denied him access to the courts.  The testimony of these witnesses, together with the plethora of pleadings filed in this matter over the last three years, rebut plaintiff's allegations to the contrary.  Ms. Box testified that plaintiff received legal assistance from ILAP almost every week during her employment at SMCI, and denied that she ever refused him legal assistance or tampered with his mail.  Further, plaintiff has failed to show how he was injured as a result of the alleged denial.  In order to prevail on denial of access to the courts claim, plaintiff must show an "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability

to meet a filing deadline or to present a claim.'" *See Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (citation omitted).  Based on the record , plaintiff's notice of appeal at issue in his mail fraud/tampering claims was ultimately found to be timely filed by the court, and plaintiff was allowed to pursue his appeal with the Fifth Circuit.  *See* Ex. P-43.

### Deliberate Indifference to Serious Medical Needs

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838.

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  The plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).

Plaintiff has failed to establish by a preponderance that the defendants, specifically James Brewer, Adam Graves, David Hollingshead, James Johnson, Don Lewis, or Lynda Powell, were deliberately indifferent to his serious medical needs.  Rather, the evidence reflects that plaintiff disagrees with the medical treatment he has received.  *See e.g.,* Ex. P-51.  *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001) (holding that a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs").  The testimony at trial reflects that plaintiff disagreed with the blood pressure medication and other medication he was prescribed, and that he refused to be treated by the dentists at SMCI, claiming that he needed to be seen by a specialist.  Further, when plaintiff was referred to an oral surgeon for his dental problems, the testimony reflects that he became disorderly and refused treatment.  In fact, plaintiff has alleged that Dr. May, the oral surgeon, is in on the mass conspiracy against him.  Plaintiff also testified that he saw another oral surgeon, Dr. Hill, in September 2006, four days after his *Spears* hearing.  The evidence and testimony establish that plaintiff was given the opportunity to be treated by an oral surgeon on two occasions, and that he did not receive treatment on the first occasion due to his own misconduct, not the actions of the defendants.

The defendants testified that they never refused plaintiff's request for medical treatment, and that when plaintiff was seen in the clinic at SMCI, he acted rude and disorderly towards the staff.  Further, according to the testimony of Jean Anderson, she spoke with Lynda Powell about investigating the plaintiff's medical needs, and Ms. Powell informed her that based on the MDOC's medical records, plaintiff had received adequate medical care.

**Conspiracy**

Conclusory allegations of a conspiracy are insufficient to state a claim under Section 1983. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992).   Further, the plaintiff must "prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984); *see also Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993).

As previously stated, plaintiff clearly believes that there is a vast conspiracy against him dating back to February 2000, involving the Holmes County Sheriff's Department, the MDOC and its employees, state and federal judges and judiciary staff, doctors and other medical staff at MDOC facilities and private clinics, defense attorneys, and the State's Attorney General. However, the evidence does not establish a conspiracy by any of the named defendants or otherwise; nor does it prove the violation of plaintiff's constitutional rights.

The evidence does not support plaintiff's conclusory allegations that Ron King or Lynda Powell conspired to deprive him of medical treatment.  To the contrary, the record reflects that plaintiff has seen numerous doctors for various ailments since he was transferred to the custody of the MDOC, including two oral surgeons.  *See also* Ex. P-62 at p. 6.  Plaintiff failed to offer sufficient proof that Officers Hollingshead and Graves conspired to deprive him of his constitutional rights.  There is also no evidence that Kenneth Stanley conspired with gang members to attack plaintiff.  Accordingly, plaintiff has failed to prove by a preponderance of the evidence his conspiracy claims against the defendants, specifically Ron King, Adam Graves,

David Hollingshead, William Madden,[16] Lynda Powell, and Kenneth Stanley.

### 28 U.S.C. § 1915(g)

The court dismissed scores of defendants and numerous allegations after the *Spears* hearing and in subsequent orders for failure to state a claim.[17]  Moreover, the court finds that these two actions are malicious in nature and filed primarily for purposes of harassment.

Plaintiff's pleadings and the proof at trial established that virtually every ruling or action by a prison official resulted in an unsupported claim that the prison official was corrupt and/or part of a vast conspiracy.  Likewise, adverse rulings by any judge in plaintiff's cases resulted in frivolous claims of conflict of interest, conspiracy, and bribery.[18]

Accordingly, each of these two matters counts as a strike pursuant to 28 U.S.C. § 1915 (g).  *See Patton v. Jefferson Correctional Ctr.,* 136 F.3d 458, 461 (5th Cir. 1998) (holding that dismissal of Section 1983 action which also included a habeas claim counted as a strike, where it was dismissed in part as frivolous under Section 1915(g), and where the habeas claim was dismissed without prejudice for failure to exhaust); *Comeaux v. Cockrell*, 72 Fed. Appx. 54, 55 (5th Cir. 2003) (holding that the district court properly dismissed part of plaintiff's Section 1983 complaint "as malicious, which counted as a strike under 28 U.S.C. § 1915(g) , even though the

---

[16]As previously noted, plaintiff did not even mention William Madden's name in his case in chief.

[17]See Orders [121], [177], and [197].

[18]*See, e.g.*, Notice of Appeal [134], Motion for Recusal [172], Motion to Remove Judge [174], and Plaintiff's Motion for Emergency Relief [180].  Further, as previously referenced, plaintiff testified at trial that Judge Nicols and Judge Barbour were involved in the conspiracy and accepted bribes from Holmes County officials; plaintiff offered no support whatsoever for these allegations.  Similarly, plaintiff testified at his *Spears* hearing that yet other judges had conflicts in this matter.  (Tr. 14-15.)

case was ultimately dismissed for failure to comply with court orders").  Plaintiff is warned that if he accumulates a third strike he may not proceed *in forma pauperis* in any civil action or appeal while he is incarcerated or detained in any facility unless he is under imminent danger or serious physical injury.

CONCLUSION

Based on the foregoing, the court finds that the plaintiff failed to prove by a preponderance of the evidence the claims asserted against the remaining defendants. Accordingly, the above matters should be dismissed with prejudice, with each dismissal counting as a "strike" pursuant to 28 U.S.C. § 1915(g).

IT IS, THEREFORE, ORDERED AND ADJUDGED that all of plaintiff's claims in these matters be, and hereby are, dismissed with prejudice.

Defendants' Supplemental Motion to Dismiss [203] and *Ore Tenus* Motion to Dismiss and/or for Summary Judgment are DENIED as moot.  Any other pending motions are denied as moot.

A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 31st day of March, 2008.

s/ Michael T. Parker
United States Magistrate Judge